**OREGON–WASHINGTON RAILROAD & NAVIGATION COMPANY and Union Pacific Railroad Company, corporations, Plaintiffs,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants.**

**Chicago, Milwaukee, St. Paul and Pacific Railroad Company, Intervenor-Defendant.**

Civ. No. 71–24.

United States District Court, D. Oregon.

Feb. 11, 1971.

James H. Anderson, Omaha, Neb., Howard E. Roos, Randall B. Kester, John F. Weisser, Jr., Portland, Or., for Oregon-Washington Railroad & Navigation Co. and Union Pac. R. Co.

Richard W. McLaren, Asst. Atty. Gen., John H. D. Wigger, Atty., Department of Justice, Washington, D. C., Sidney I. Lezak, U. S. Atty., Portland, Or., for the United States of America.

Fritz R. Kahn, General Counsel, Manny H. Smith, Attorney, Interstate Commerce Commission, Washington, D. C., for the Interstate Commerce Commission.

Souther, Spaulding, Kinsey, Williamson & Schwabe, John L. Schwabe, Rockne Gill, Portland, Or., Raymond K. Merrill, Chicago, Ill., Warren H. Ploeger, Seattle, Wash., for Chicago, Milwaukee, St. Paul and Pacific R. Co.

Before HAMLEY, Circuit Judge, and SOLOMON and BELLONI, District Judges.

## OPINION

**PER CURIAM:**

Plaintiffs, Union Pacific (UP) and its controlled subsidiary Oregon-Washington Railroad & Navigation Company, seek to enjoin orders of the Interstate Commerce Commission (ICC) authorizing the Chicago, Milwaukee, St. Paul and Pacific Railroad Company (Milwaukee) to use 50 miles of trackage between Longview Junction, Washington, and Portland, Oregon. This trackage is now used by several carriers, including the Burlington-Northern (BN) and the UP. ICC orders entered October 12, 1970, and January 6, 1971, authorized the granting of trackage rights to Milwaukee without a hearing, although hearings on Milwaukee's proposed connection to the Southern Pacific lines in south Portland are planned. UP, alone, opposed the granting to Milwaukee of trackage rights from Longview to Portland.

The Supreme Court, in the Northern Lines Merger Cases (United States v. I. C. C.,) 396 U.S. 491, 90 S.Ct. 708, 24 L. Ed.2d 700 (1970), approved a merger between a number of railroads which had formerly served the northern tier states independently. The merger, from which was formed the present BN, was accomplished one month after Supreme Court approval.

In the early 1960s, the ICC held extensive hearings on the proposed BN merger. The Milwaukee, the State of Washington, and the UP actively opposed the merger at these hearings. Milwaukee urged that, if a merger was approved, Milwaukee be granted access to Portland over the Longview trackage. UP opposed this suggestion.

The ICC initially denied the merger application, but on reconsideration de-

cided to permit the merger, but only if Milwaukee's post-merger competitive position could be preserved and strengthened by permitting it to serve Portland. The Northern Lines agreed, and the merger was approved.

Even though the ICC specifically rejected UP's position on potential loss to UP and on the harm to the public by permitting Milwaukee to reach Portland, UP did not pursue its objections to the merger in the litigation which followed. United States v. United States, 296 F. Supp. 853, 860 (D.D.C.1968). The district court sustained the ICC approval, finding that the public interest would be served by the merger since competition between BN and Milwaukee could be preserved by insuring Milwaukee's entry into Portland.

The Supreme Court, in the *Northern Lines Merger Cases, supra,* 396 U.S. at 515–516, 90 S.Ct. at 719, 720, specifically approved this finding when it stated:

"Under the new conditions the posture of the Milwaukee, lying largely between the two Northerns and handicapped by limitations at both eastern and western terminals, will be greatly improved. Absent the protective conditions it would continue to be virtually strangled by the unified system; with them the Milwaukee gives prospect of affording substantial competition to the merged lines * * *. Its past failure to become a meaningful competitor came in large part because its lines did not reach into Portland, Oregon * * *. Another condition attached to the Commission's approval will permit the Milwaukee to run lines from its present western terminus into Portland, giving it a link with the Southern Pacific. All this will enable the Milwaukee to compete with the Northern Lines * * *."

Shortly thereafter, Milwaukee filed its application for trackage rights under section 5(2) of the Interstate Commerce Act, 49 U.S.C. § 5(2), and attached an agreement between BN and Milwaukee for the use of the tracks. UP protested. The ICC approved Milwaukee's entry into Portland, finding that trackage rights applications were within section 5(2) of the Act and consistent with the public interest. On January 6, 1971, the Commission denied UP's request for reconsideration but granted its alternative request that the ICC retain jurisdiction of the trackage rights problem for 60 days following consummation in order to consider protective traffic and operating conditions.

■ UP's basic contention is that Milwaukee's application should have been filed under section 1(18)–(21) of the Interstate Commerce Act, 49 U.S.C. § 1(18)–(21), and not under section 5(2)(b). The former section requires hearings and a finding of public necessity when tracks are abandoned, constructed, or acquired. Section 5(2) permits a railroad, with ICC approval, to "acquire trackage rights over, or joint ownership in or joint use of, any railroad line or lines" when consistent with public interest. Under this section, public hearings are discretionary with the Commission.

In our view, the Commission was authorized to consider this application under section 5(2)(b) in accordance with its long-established practice. Chicago, B. & Q. R. Co., Control, 271 I.C.C. 63, 66–67; Spokane, P. & S. Ry. Co. and Union P. R. Co., Control, 334 I.C.C. 419, 431 (1969).

■ UP next contends that the ICC abused its discretion in not granting a hearing. UP seeks to update the evidence it presented to the ICC at the merger hearings to show that its losses by Milwaukee's entry to Portland would now be much greater. The ICC found the UP's loss would be *de minimis* and that by reason of its strong position in the area, it could well assume the loss. It also found that the desirability of strengthening Milwaukee's competitive hand justified the granting of these trackage rights. The ICC retained jurisdiction for 60 days to deal with the problem of congestion and the other problems that UP asserts will occur.

In our view, the trackage rights involved here were intimately bound up with the merger proceedings and the Commission heard practically all of the evidence the UP now seeks to present here.

The ICC found against UP and approved the merger only because it expected Milwaukee to operate in Portland.

There is no merit in UP's contention that Milwaukee's application for trackage rights under section 5(2) constituted an admission that a hearing is necessary or that all parties contemplated further hearings on trackage rights.

The orders of the ICC were not arbitrary, but were based upon proper standards supported by ample evidence.

The orders of the Commission dated October 12, 1970, and January 6, 1971, authorizing trackage rights for Milwaukee from Longview Junction, Washington, to Portland are affirmed and this case dismissed.